UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

VICKERY J. MCCRAY,

               Petitioner,             Case No. 2:18-cv-84

v.                                   Honorable Gordon J. Quist

CONNIE HORTON,

               Respondent.
_____/

## **REPORT AND RECOMMENDATION**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Vickery J. McCray is incarcerated with the Michigan Department of Corrections at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. Following a two-day jury trial in the Ingham County Circuit Court, Petitioner was convicted of criminal sexual assault in the first degree and unlawful imprisonment. On November 19, 2014, the court sentenced Petitioner as a fourth habitual offender to concurrent respective prison terms of 25 to 50 years and nine years, 6 months to 25 years.

On June 14, 2018, Petitioner filed his habeas corpus petition. Under Sixth Circuit precedent, the application is deemed filed when handed to prison authorities for mailing to the federal court. *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002).

The petition raises 11 grounds for relief, as follows:

I.      Petitioner's Sixth Amendment right to effective assistance of trial counsel and appellate counsel was violated when his trial and

appellate counsel failed to investigate and raise the issue of competency to stand trial and the defense of insanity.

II.    Mr. McCray is entitled to a new trial because trial counsel provided constitutionally ineffective assistance in violation of the United States and Michigan Constitutions.

III.    The Double Jeopardy Clauses of the state and federal Constitutions preclude the prosecutor from "successive prosecutions" of the same offense after an acquittal of that offense. Alternatively, ineffective representation by trial counsel by not moving for a directed verdict of acquittal or a relief from judgement after the verdict.

IV.    Trial court abused its discretion in admitting an uncorroborated 911 tape into evidence. Alternatively, prosecutor knowingly used the 911 tape in his closing argument, which was improper and unduly prejudicial. Also, ineffective representation of counsel counselor rendered waiver of pre-trial challenges to the 911 tape usage invalid.

V.    Trial court abused its discretion in admitting a 911 tape transcript read-along, contrary to mandated Michigan case law. Alternatively, prosecutor knowingly used the transcript in his closing argument, which was improper and unduly prejudicial. Also, trial counsel knowingly violated Defendant's Sixth Amendment right to confront a witness against him.

VI.    The Sexual Assault Nurse Examiner's testimony was inadmissible hearsay testimony, which resulted in manifest injustice.

VII.    Trial court abuse its discretion in breaching the mantle of impartiality throughout the trial. Alternatively, trial counsel was ineffective for aiding in this injustice.

VIII.    Constitutional deprivation of Defendant's liberty without due process of law resulting from prosecutorial misconduct and the trial Judge's instruction to the jury. Alternatively, trial counsel's failure to object, thus showing the counsel was an aid to this conspiracy to convict.

IX.    Defendant was denied the constitutional protection of due process of law during sentencing due to the abuse of discretion by the trial court, prosecutorial misconduct, and ineffective assistance of counsel.

X. Suppression of evidence by the actions of the investigating police officers violated the Defendant's constitutional right to a fair trial. Alternatively, trial counsel's failure to confront suppression denied Defendant Sixth Amendment right to present a defense.

XI. Defendant was denied his constitutional right to a jury of fair racial cross-section of the community.

(Pet., ECF No. 1, PageID.11-17, 22-30.)  In a supplement to his habeas petition, Petitioner also raises an additional claim:

XII. Petitioner is arguing that the specific evidence introduced at trial was insufficient to satisfy the elements of assault by strangulation or suffocation.

(ECF No. 11, PageID.387.)

Respondent has filed an answer to the petition (ECF No. 15) stating that the grounds should be denied because they are non-cognizable or meritless.  Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I respectfully recommend that the Court deny the petition.

## **Discussion**

## I.    **Facts**

McCray and his victim were neighbors in Lansing, Michigan.  (ECF No. 16-7, PageID.643.)  On past occasions they had smoked crack cocaine together and had engaged in sex.  (*Id*., PageID.643, 648.)  The victim stated that McCray was her father's friend and that she was never in a romantic or sexual relationship with McCray.  (*Id*., PageID.631, 634.)  On October 25, 2013, the victim went to McCray's house to share a rock of cocaine.  (*Id*., PageID.648.)  She left and returned later that evening when McCray asked her to bring him money.  (*Id*., PageID.642-643.)  The

victim had been drinking alcohol and drank more while at McCray's home.  (*Id.*, PageID.631.)  McCray smoked crack cocaine.  (*Id.*, PageID.643.)

At some point, when the victim tried to leave, McCray forcefully stopped her. (*Id.*, PageID.644.) McCray pushed her to the floor and sexually assaulted her.  (Id., PageID.644-645.)  The victim was able to call 911 and the events during the assault were recorded.  (*Id.*, PageID.628, 635-636, 645.)  After the police arrived, McCray was taken into custody.  (*Id.*, PageID.629, 636, 640.)  The victim was taken to the hospital. (*Id.*, PageID.645.)

The jurors deliberated for about five hours before finding Petitioner guilty of criminal sexual conduct in the first-degree and unlawful imprisonment. (ECF No. 16-8, PaigeID.687-690.)

Petitioner, with the assistance of counsel, appealed his conviction raising the issue identified as habeas issue II. (ECF No. 16-10, PageID.739.) Thereafter, McCray filed his own *pro per* supplemental brief, known in Michigan as a Standard 4 brief, in which he raised, for the first time, the issues identified as habeas issues III, IV, V, VI, VII, VIII, IX, X, and XI. (*Id.*, PageID.770-773.) Thereafter, by unpublished opinion issued July 26, 2016, the court of appeals denied relief, affirming the trial court with respect to all issues Petitioner raised. (*Id.*, PageID.702.)

Petitioner then filed a *pro per* application for leave to appeal in the Michigan Supreme Court raising the same issues he had raised in the court of appeals. (ECF No. 16-11, PageID.916-965.) By order entered June 27, 2017, the supreme court

denied leave to appeal because the court was "not persuaded that the questions presented should be reviewed." (*Id.*, PageID.915.)

Petitioner did not file a petition for certiorari in the United States Supreme Court.  Instead, he timely filed his habeas petition.

## II.    AEDPA standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693–94 (2002).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:   "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."   28 U.S.C. § 2254(d).  "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)) (internal quotation marks omitted)).  This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  In determining whether federal law is clearly

established, the Court may not consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer*, 959 F.3d at 721. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough*, 541 U.S. at 664. "[W]here the precise contours of the right remain

6

unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review. The federal court is not free to consider any possible factual source. The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the underlying claim on its merits. *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"—for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721.  Then, the petitioner's claim is reviewed *de novo*.  *Id.* (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

## III.   Failure to Exhaust Habeas Claims I and XII

Respondent argues that Petitioner failed to exhaust habeas claim I, alleging ineffective assistance of trial and appellate counsel for failing to investigate and assert incompetence and insanity, and habeas claim XII, contesting the sufficiency of evidence, in the state courts.

Before the court may grant habeas relief to a state prisoner, the prisoner must exhaust remedies available in the state courts.  28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).  Exhaustion requires a petitioner to "fairly present" federal claims so that state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon a petitioner's constitutional claim.  *O'Sullivan*, 526 U.S. at 842; *Picard v. Connor*, 404 U.S. 270, 275-77 (1971) (cited by *Duncan v. Henry*, 513 U.S. 364, 365 (1995), and *Anderson v. Harless*, 459 U.S. 4, 6 (1982)).  To fulfill the exhaustion requirement, a petitioner must have fairly presented his federal claims to all levels of the state appellate system, including the state's highest court.  *Duncan*, 513 U.S. at 365-66; *Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990).  "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional

issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845.

The district court can and must raise the exhaustion issue *sua sponte*, when it clearly appears that habeas claims have not been presented to the state courts. *Prather v. Rees*, 822 F.2d 1418, 1422 (6th Cir. 1987); *Allen*, 424 F.2d at 138-39.  "[A] state may not be considered to have waived the defense of nonexhaustion unless it does so expressly and through counsel." *Rockwell v. Yukins*, 217 F.3d 421, 423-4 (6th Cir. 2000).

Petitioner has never presented habeas claim I to the state courts on any level. Petitioner failed to raise habeas claim I in either his appellate counsel's brief or his own *pro per* brief. (ECF No. 16-10, PageID.739-765; ECF No. 16-11, PageID.916-965.) Accordingly, habeas claim I is unexhausted, barring habeas relief.

Additionally, Petitioner presented habeas claim XII for the first time in his application to leave to appeal in the Michigan Supreme Court. Presentation of an issue for the first time on discretionary review to the state supreme court does not fulfill the requirement of "fair presentation." *Castille v. Peoples*, 489 U.S. 346, 351 (1989).  Applying *Castille*, the Sixth Circuit repeatedly has recognized that a habeas petitioner does not comply with the exhaustion requirement when he fails to raise a claim in the state court of appeals but raises it for the first time on discretionary appeal to the state's highest court. *Skinner v. McLemore*, 425 F. App'x 491, 494 (6th Cir. 2011); *Thompson v. Bell*, 580 F.3d 423, 438 (6th Cir. 2009); *Warlick v. Romanowski*, 367 F. App'x 634, 643 (6th Cir. 2010); *Granger v. Hurt*, 215 F. App'x

485, 491 (6th Cir. 2007); *Dunbar v. Pitcher*, No. 98-2068, 2000 WL 179026, at *1 (6th Cir. Feb. 9, 2000); *Miller v. Parker*, No. 99-5007, 1999 WL 1282436, at *2 (6th Cir. Dec. 27, 1999); *Troutman v. Turner*, No. 95-3597, 1995 WL 728182, at *2 (6th Cir. Dec. 7, 1995); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990); *accord Parkhurst v. Shillinger*, 128 F.3d 1366, 1368-70 (10th Cir. 1997); *Ellman v. Davis*, 42 F.3d 144, 148 (2d Cir. 1994); *Cruz v. Warden of Dwight Corr. Ctr.*, 907 F.2d 665, 669 (7th Cir. 1990); *but see Ashbaugh v. Gundy*, 244 F. App'x 715, 717 (6th Cir. 2007) (declining to reach question of whether a claim raised for the first time in an application for leave to appeal to the Michigan Supreme Court is exhausted).  Unless the state supreme court actually grants leave to appeal and reviews the issue, it remains unexhausted in the state courts.  Petitioner's application for leave to appeal was denied, and, thus, the issue was not reviewed.

Because Petitioner has some claims that are exhausted and some that are not, he may choose to proceed only with his exhausted habeas claims or return to the state courts to present habeas claims I and XII in a motion for relief of judgment and, if he does not prevail, to exhaust those denials through the state appellate courts.  It is recommended that the court dismiss claims I and XII without prejudice and address the remaining exhausted claims.

## IV.  Ineffective Assistance, Habeas Claim II

Petitioner contends that his trial counsel was ineffective for failing to meet with him more and thoroughly investigate the case. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate

claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *Burt v. Titlow*, 571 U.S. 12, 15 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011). In those circumstances, the question before the habeas court is "whether

there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740–41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102).

The Michigan Court of Appeals concluded that the record does not support Petitioner's claims:

> Defendant argues that defense counsel was ineffective for failing to meet with him before trial, failing to prepare defendant for trial, and by failing to learn through adequate trial preparation of defendant's intent to testify that he did not sexually penetrate the victim on the night of the charged offense. "Failure to make a reasonable investigation can constitute ineffective assistance of counsel." *People v. McGhee*, 268 Mich.App 600, 626; 709 NW2d 595 (2005). Defense counsel's duty is to prepare, investigate, and present all substantial defenses. *In re Ayres*, 239 Mich.App 8, 22; 608 NW2d 132 (1999). Defense counsel has a duty to make reasonable investigations or to make a reasonable decision that renders particular investigations unnecessary. *People v. Grant*, 470 Mich. 477, 485; 684 NW2d 686 (2004). However, "[w]hen making a claim of defense counsel's unpreparedness, a defendant is required to show prejudice resulting from this alleged lack of preparation." *People v. Caballero*, 184 Mich.App 636, 640; 459 NW2d 80 (1990). To fulfill this burden, a defendant must prove "that the failure resulted in counsel's ignorance of valuable evidence which would have substantially benefited the accused." Id. at 642.
>
> The record reflects that at least one meeting occurred. Assuming without deciding that counsel performed ineffectively by failing to undertake additional meetings, the record does not support defendant's claim of prejudice. Contrary to the averments in his affidavit, defendant testified at trial that he and the victim engaged in consensual sexual relations. Indeed, defendant claimed that the victim's screams were typical of her behavior during consensual sex. Given this evidence, we discern no reasonable probability that additional meetings would have yielded information that, if known to counsel, likely would have benefitted the defense and altered the trial's outcome.

*People v. McCray*, No. 325362, 2016 WL 4008401, at \*1-2 (Mich. Ct. App. July 26, 2016).

Petitioner contends that his counsel failed to meet with him prior to trial aside from a ten-to-fifteen-minute conversation which resulted in a failure to investigate. (ECF No. 1, PageID.16.) However, the record reflects one meeting where counsel informed Petitioner of a plea deal, which he refused. (ECF No. 16-7, PageID.602.) Additionally, Petitioner dismissed his first attorney because he claims that she failed to pass information about the case to him. (ECF No. 16-5, PageID.590-592.) Petitioner was then appointed new counsel, James White. (ECF No. 16-6, PageID.597-598.)

Attorney White then requested funds for a private investigator, which the court granted. (ECF No. 16-1, PageID.546.) The record reflects the private investigator did some work as attorney White said, "the private detective came in about 10 minutes ago with an additional name." (ECF No. 16-7, PageID.602.) The record also shows that attorney White presented a defense that Petitioner and the victim were in a consensual relationship, she only called 911 to get out of paying for drugs, and that her screaming was her typical behavior during consensual sex. (*Id.*, PageID.626.) Attorney White also cross-examined the witnesses consistent with this theory. (*Id.*, PageID.630-659.) Based upon these factors, Petitioner has failed to show that his counsel's performance was defective.

Additionally, Petitioner fails to show prejudice. Only Petitioner and the victim were present during the assault.  Defense counsel could not have called any additional witnesses who witnessed the events. Further, the Michigan Court of

Appeals noted "we discern no reasonable probability that additional meetings would have yielded information that . . . likely would have benefitted the defense and altered the trial's outcome." (ECF No. 16-10, PageID.703.) Both the victim and Petitioner testified regarding the events that occurred. On habeas review, Petitioner must show the court of appeals' determination that his counsel was not ineffective was objectively unreasonable. Petitioner fails to make this showing; therefore, it is recommended that the Court find he is not entitled to habeas relief on this claim.

## IV.    Procedural Default

Respondent asserts that Petitioner procedurally defaulted a number of his claims.  When a state-law default prevents further state consideration of a federal issue, the federal courts ordinarily are precluded from considering that issue on habeas corpus review.  *Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991); *Engle v. Isaac*, 456 U.S. 107 (1982).  To determine whether a petitioner procedurally defaulted a federal claim in state court, the Court must consider whether (1) the petitioner failed to comply with an applicable state procedural rule, (2) the state court enforced the rule so as to bar the claim, and (3) the state procedural default is an "independent and adequate" state ground properly foreclosing federal habeas review of the federal constitutional claim.  *Hicks v. Straub,* 377 F.3d 538, 551 (6th Cir. 2004); *accord Lancaster v. Adams*, 324 F.3d 423, 436-37 (6th Cir. 2003); *Greer v. Mitchell*, 264 F.3d 663, 672 (6th Cir. 2001); *Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001).  In determining whether a state procedural rule was applied to bar a claim, a reviewing court looks to the last reasoned state-court decision disposing of the claim.  *Ylst*, 501 U.S. at 803; *Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010).

If a petitioner procedurally defaulted his federal claim in state court, the petitioner must demonstrate either (1) cause for his failure to comply with the state procedural rule and actual prejudice flowing from the violation of federal law alleged in his claim, or (2) that a lack of federal habeas review of the claim will result in a fundamental miscarriage of justice. *House v. Bell*, 547 U.S. 518, 536 (2006); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Murray v. Carrier*, 477 U.S. 478, 495 (1986); *Hicks*, 377 F.3d at 551-52. The miscarriage-of-justice exception only can be met in an "extraordinary" case where a prisoner asserts a claim of actual innocence based upon new reliable evidence. *House*, 547 U.S. at 536. A habeas petitioner asserting a claim of actual innocence must establish that, in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt. *Id.* (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995))

Where the state court has noted a defendant's possible violation of a procedural rule but does not expressly hold that the procedural rule applies, it does not constitute a procedural default. *Smith v. Cook*, 956 F.3d 377, 385 (6th Cir. 2020) (citing *Clinkscale v. Carter*, 375 F.3d 430, 441-42 (6th Cir. 2004) ("Although the decision unquestionably mentions [the procedural rule] and its requirements, it also emphasizes and relies upon [the merits]. It is unclear on what ground, or grounds, the court's judgment rested. Under these circumstances, we are unable to say that the Ohio Court of Appeals' decision 'clearly and expressly states that its judgment rests on a state procedural bar.'" (quoting *Harris*, 489 U.S. at 263)); *Sanders v. Cotton*, 398 F.3d 572, 579–80 (7th Cir. 2005) (finding no procedural default where state court

noted that "if an issue was available on direct appeal but not litigated, it is [forfeited]," but then "immediately proceeded to address and decide the merits" without directly saying that forfeiture had occurred)).

A state law procedural rule is adequate and independent when it was "firmly established and regularly followed" at the time of the asserted procedural default. *Rogers v. Howes*, 144 F.3d 990, 992 (6th Cir. 1998) (citing *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991)). Although there may be an "exceptional case in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question," *see Lee v. Kemna*, 534 U.S. 362, 376 (2002), this case does not fall within that "limited category." *Id.*

The Supreme Court repeatedly has recognized, however, that "'the adequacy of state procedural bars to the assertion of federal questions . . . is not within the State's prerogative finally to decide; rather adequacy is itself a federal question.'" *Cone v. Bell*, 556 U.S. 449, 465 (2009) (quoting *Lee v. Kemna*, 534 U.S. 362, 375 (2002)) (other internal quotations omitted). In a small category of cases, the asserted state ground may be inadequate to block adjudication of a federal claim. For instance, substantial compliance with a state court rule may be adequate when the trial court's ruling would not have been affected by perfect compliance with the state rule and when no published state law decision mandates flawless compliance with the state court rule. *Lee v. Kemna*, 534 U.S. 362, 382 (2002). Another example is when the state court requires a contemporaneous objection to a jury instruction and counsel makes an objection during a pretrial motion to dismiss, consideration of the federal

due process claim is not blocked because the rule serves "no perceivable state interest." *Osborne v. Ohio*, 495 U.S. 103, 124 (1990).

In addition, "when the record reveals that the state court's reliance upon its own rule of procedural default is misplaced, we are reluctant to conclude categorically that federal habeas review of the purportedly defaulted claim is precluded." *Greer v. Mitchell*, 264 F.3d 663, 675 (6th Cir. 2001), *cited in Hill v. Mitchell*, 400 F.3d 308, 314 (6th Cir. 2005).

Further, the Supreme Court clarified the laws governing procedural default in two recent decisions, *Beard v. Kindler*, 558 U.S. 53 (2009), and *Walker v. Martin*, 562 U.S. 307 (2011).

In *Kindler*, the Supreme Court held that, "a discretionary state procedural rule can serve as an adequate ground to bar federal habeas review," because it can be considered "firmly established." *Kindler*, 558 U.S. at 60.  Extending the precedent it set in *Kindler*, in *Martin*, the Supreme Court emphasized the practical importance of "preserving the flexibility" of states' discretionary procedural rules.  *See Martin*, 562 U.S. at 311.  Thus, the Supreme Court held in *Martin* that even wholly discretionary state procedural rules may constitute adequate state grounds for foreclosing federal review of a habeas claim.  *See id.* at 316-17.  *See also Stone v. Moore*, 644 F.3d 342, 345-46 (6th Cir. 2011) (applying *Kindler* and *Martin* to Ohio discretionary rule on delayed applications for leave to appeal).

In *Johnson v. Lee*, 136 S. Ct. 1802 (May 31, 2016), the Supreme Court rejected the Ninth Circuit's attempt to distinguish *Kindler* and *Martin*, by suggesting that the

California procedural rule barring collateral review of claims that could have been raised on direct appeal was a mandatory, as opposed to discretionary, rule. In such circumstances, the Ninth Circuit had reasoned, any deviation from the application of the rule, demonstrated that the rule was not adequate, because it was not regularly followed. The Supreme Court reversed, holding that the reasoning of *Kindler* and *Martin* controlled. *Id.* at 1806-07.

The doctrine of procedural default is applicable where a petitioner fails to comply with a state procedural rule, the rule is actually relied upon by the state courts, and the procedural rule is "adequate and independent." *See Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). To determine whether Petitioner has been denied relief based on a procedural default, we look to the last "reasoned judgment rejecting the [federal] claim." *Ylst*, 501 U.S. at 803. The doctrine is applicable if "the last state court to review [the prisoner's] conviction 'clearly and expressly' relied on [the prisoner's] procedural default in its decision affirming Petitioner's conviction." *Rust v. Zent*, 17 F.3d 155, 161 (6th Cir. 1994).

In *Wilson v. Sellers*, 138 S. Ct. 1188, 1193-94 (2018), the Supreme Court held that, in reviewing the basis for a summary appellate order of affirmance, the habeas court should apply the doctrine of *Ylst*, and "look through" the unexplained order to the last reasoned decision of the state court. This applies beyond determining whether the affirmance was based on a procedural default or the merits. The Supreme Court rejected the argument that *Harrington v. Richter*, 562 U.S. at 101-102, requires the habeas court to simply give deference to the appellate court's result,

rather than look beyond that decision to the reasoning below.  The Court distinguished *Harrington v. Richter*, which requires federal habeas courts to give deference to unexplained state-court appellate decisions, and further requires a habeas petitioner to show that "there was no reasonable basis for the state court to deny the relief."  *Wilson*, 138 S. Ct. at 1195 (quoting *Richter*, 562 U.S. at 101-02). The *Wilson* Court distinguished *Richter*, because, in *Richter*, there existed no reasoned opinion of a lower court to look to.  *Id*.

When a petitioner has filed a state-court application for habeas relief, which was denied for procedural reasons, the Supreme Court has held that pursuit of an appeal by way of an independent habeas petition in the state supreme court is treated differently.  In that case, the standard order of denial is construed as a merits decision.  *Kernan v. Hinojosa*, 598 U.S. ___, No. 15-833 (May 16, 2016).

"[W]here, as here, the last reasoned opinion on the claim explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits."  *Ylst*, 501 U.S. at 803.

The Michigan Court of Appeals considered Petitioner's unpreserved claims involving the 911 evidence, prosecutorial misconduct, jury instructions, failure to disclose exculpatory evidence, that the jury was not derived from a fair cross section of the community, and related ineffective assistance of counsel claims for plain error. After expressly noting Petitioner's default in failing to object, the Michigan Court of Appeals then reviewed Petitioner's claim for plain error, finding none.  In this circuit, "plain error review does not constitute a waiver of state procedural default rules."

*Seymour v. Walker*, 224 F.3d 542 (6th Cir. 2000) (citations omitted); *see also Wogenstahl v. Mitchell*, 668 F.3d 307, 337 (6th Cir. 2012); *Fleming v. Metrish*, 556 F.3d 520, 530 (6th Cir. 2009); *Keith v. Mitchell*, 455 F.3d 662, 673-74 (6th Cir. 2006); *Scott v. Mitchell*, 209 F.3d 854, 866-68 (6th Cir. 2000); *Coe v. Bell*, 161 F.3d 320, 330 (6th Cir. 1998); *McBee v. Abramajtys*, 929 F.2d 264, 267 (6th Cir. 1991) (same); *Paprocki v. Foltz*, 869 F.2d 281, 284-85 (6th Cir. 1989).

## 1. Admission of 911 Call and Transcript Evidence, Habeas Claim IV and V

Petitioner procedurally defaulted his 911 evidence claims because he failed to properly object to its admission. Petitioner withdrew objections to the admission of the 911 evidence after conceding admissibility. In addition, Petitioner's claims arise under state evidentiary rules that fail to implicate Constitutional concerns. In his petition, Petitioner contends that the state trial court erred in admitting the 911 tape and transcript. The extraordinary remedy of habeas corpus lies only for a violation of the Constitution. 28 U.S.C. § 2254(a). As the Supreme Court explained in *Estelle v. McGuire*, 502 U.S. 62 (1991), an inquiry whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction . . . [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Id.* at 67–68. Rather, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* at 68. "Generally, state-court evidentiary rulings cannot rise to the level of due process violations unless they 'offend[] some principle of justice so rooted in the traditions

and conscience of our people as to be ranked as fundamental.'" *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996)); *see also Wilson v. Sheldon*, 874 F.3d 470, 475–76 (6th Cir. 2017).  This approach accords the state courts wide latitude in ruling on evidentiary matters. *Seymour*, 224 F.3d at 552 (6th Cir. 2000).

Further, under the AEDPA, the court may not grant relief if it would have decided the evidentiary question differently.  The court may only grant relief if Petitioner is able to show that the state court's evidentiary ruling was in conflict with a decision reached by the Supreme Court on a question of law or if the state court decided the evidentiary issue differently than the Supreme Court did on a set of materially indistinguishable facts.  *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000).  Petitioner has not met this difficult standard; therefore, Petitioner's claims are not cognizable on federal habeas review.

Petitioner waived claim V, which contested the admissibility of the 911 transcript, when his counsel agreed to its authenticity and withdrew his objection to the transcript. (ECF No. 16-10, PageID.706-707.) Because Petitioner waived this claim, he is not entitled to habeas relief on this claim.

Additionally, the Michigan Court of Appeals rejected Petitioner's claims by reviewing under a plain error standard because the issue was unpreserved:

> Defendant next argues that it was improper to introduce the recorded 911 call that was placed from the victim's phone, because the statements in the recording were inadmissible hearsay. He also argues that it was improper to introduce a transcript of the recorded call to assist the jury in better understanding the contents of the call. We find no plain error in the introduction of this evidence.

21

The recording captured the victim's statements during the sexual assault. Those statements were admissible under both the present sense exception, MRE 803(1), and the excited utterance exception, MRE 803(2), to the hearsay rule. Although defendant argues that the present sense exception contains a requirement that additional evidence be presented that the event was actually occurring, see *People v. Hendrickson*, 459 Mich. 229, 238; 586 NW2d 906 (1998), the excited utterance exception requires no such showing, *People v.. Barrett*, 480 Mich. 125, 134; 747 NW2d 797 (2008). Regardless, there was additional evidence, through the statements on the 911 call, as well as the responding police officers' testimony, that a "startling" event was occurring. There was no plain error in the admission of this evidence.

Further, because the evidence was properly admitted, it was not improper for the prosecutor to discuss this evidence during closing argument. A prosecutor is free to comment on the evidence and all reasonable inferences arising from the evidence as it relates to the prosecution's theory of the case. *People v. Bahoda*, 448 Mich. 261, 282; 531 NW2d 659 (1995). Similarly, because defendant has not shown that the evidence was inadmissible, he cannot show that defense counsel was ineffective for failing to object to its admission. *Wilson*, 252 Mich.App at 393–394.

We also reject defendant's claim that the transcript of the 911 call was improperly admitted. Despite an initial objection, defense counsel later informed the trial court that he had spoken with the individual who created the transcript and was satisfied that a foundation existed to admit the transcript. Therefore, he withdrew his objection. By knowingly and intentionally relinquishing his earlier objection and agreeing to the admission of the transcript, counsel waived any error in its admission, leaving no error to review. *People v. Carter*, 462 Mich. 206, 215; 612 NW2d 144 (2000). With respect to defendant's related ineffective assistance of counsel claim, counsel's affirmative effort to determine whether the 911 call was accurately transcribed satisfies objective standards of reasonableness, and counsel's decision to allow the transcript to be used to enable the jurors to better understand what they were hearing was a matter of trial strategy, which we will not second-guess. *Dunigan*, 299 Mich.App at 589–590. Counsel was satisfied that incomprehensible portions of the tape were properly redacted from the transcript and clearly indicated that his agreement was with the tape's foundation and not the substance recorded. Defendant has further not demonstrated any inaccuracy in the transcript and, therefore, has

not established that he was prejudiced by its introduction. *Trakhtenberg*, 493 Mich. at 51.

*People v. McCray*, No. 325362, 2016 WL 4008401, at *5-6 (Mich. Ct. App. July 26, 2016).

As the Michigan Court of Appeals explained, the only speakers on the 911 tape were Petitioner, the victim, and a police officer. The statements were admissible under the Michigan rules of evidence.  Because the 911 tape and transcript were admissible, the prosecutor could properly use the evidence; therefore, Petitioner is not entitled to habeas relief on this claim.

## 2.    Prosecutor Misconduct and Jury Instructions, Habeas Claim VIII

Petitioner contends that the prosecutor committed several instances of misconduct, that the jury instructions were deficient, and that defense counsel was ineffective for failing to object.  Respondent argues that Petitioner procedurally defaulted his prosecutorial misconduct claims and that the jury instructions were proper.

The Michigan Court of Appeals rejected these claims noting that the prosecutorial misconduct claims were unpreserved making them procedurally defaulted and that the jury instruction claims lack merit:

> Defendant raises several claims concerning the prosecutor's conduct, none of which are preserved. The "test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial." *People v. Dobek*, 274 Mich.App 58, 63; 732 NW2d 546 (2007). Unpreserved claims of misconduct are reviewed for plain error affecting defendant's substantial rights. *Carines*, 460 Mich. at 763.

Defendant complains that the prosecutor objected when defense counsel questioned the victim about what defendant had done in the past to "seduce" her. However, the trial court overruled the prosecutor's objection. Regardless of whether the prosecutor's objection could be considered improper, because defense counsel was allowed to pursue this line of questioning, defendant cannot show that the objection affected his substantial rights.

Defendant also argues that the prosecutor committed misconduct when he cross-examined defendant about how long he had known the victim and, more specifically, whether he knew her when she was in high school. A prosecutor's good-faith effort to admit evidence does not constitute misconduct. *People v. Ackerman*, 257 Mich.App 434, 448; 669 NW2d 818 (2003). This line of questioning was probative of the nature of the relationship between defendant and the victim. Testimony concerning defendant's relationship with the victim, and their respective age differences, was arguably relevant to the issue of coercion, an element of the first-degree CSC charge. MRE 401. Accordingly, this line of questioning was not plain error.

Defendant also argues that the prosecutor committed misconduct during closing argument by discussing defendant's defense of consent, and arguing that defendant's version of the events was not supported by other evidence. We disagree. The prosecutor is permitted to argue the evidence and all reasonable inferences arising from it, and is free to argue that a witness should not be believed. *Dobek*, 274 Mich.App at 66; *People v. Callon*, 256 Mich.App 312, 330; 662 NW2d 501 (2003). Further, the prosecutor did not improperly shift the burden of proof by arguing that the evidence did not support a defense of consent. Indeed, the prosecutor told the jury that it was the duty of the prosecution to prove the elements of the offense, and that the jury was required to acquit defendant if he raised a reasonable doubt about whether the sex was not consensual. The prosecutor also made it clear that defendant did not have to offer any evidence in support of his innocence. Accordingly, there was no plain error.

Defendant's concurrent claim of instructional error is also without merit. Contrary to defendant's assertion, the trial court repeatedly told the jury that it was the prosecutor's responsibility to prove each element of the charged offenses beyond a reasonable doubt. The instructions sufficiently protected defendant's rights. *People v. Bartlett*, 231 Mich.App 139, 143; 585 NW2d 341 (1998).

24

> Because defendant has not shown any error in the prosecutor's statements or the trial court's jury instructions, his related claim that defense counsel was ineffective for failing to object to these matters cannot succeed. *Wilson*, 252 Mich.App at 393–394.

*People v. McCray*, No. 325362, 2016 WL 4008401, at *7-8 (Mich. Ct. App. July 26, 2016).

Petitioner is unable to show cause and prejudice for his procedural default of his prosecutorial misconduct issues.  In order for a petitioner to be entitled to habeas relief on the basis of prosecutorial misconduct, the petitioner must demonstrate that the prosecutor's improper conduct "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  "[T]he touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor."  *Smith v. Phillips*, 455 U.S. 209, 219 (1982)).  In evaluating the impact of the prosecutor's misconduct, a court must consider the extent to which the claimed misconduct tended to mislead the jury or prejudice the petitioner, whether it was isolated or extensive, and whether the claimed misconduct was deliberate or accidental.  *See United States v. Young*, 470 U.S. 1, 11–12 (1985).  The court also must consider the strength of the overall proof establishing guilt, whether the conduct was objected to by counsel and whether a curative instruction was given by the court.  *See id.* at 12–13; *Darden*, 477 U.S. at 181–82; *Donnelly*, 416 U.S. at 646–47; *Berger v. United States*, 295 U.S. 78, 84–85 (1935).

Similarly, Petitioner's jury instruction claims fail to implicate the Constitution and lack merit.  In general, the fact that a jury instruction was allegedly incorrect

under state law is not a basis for federal habeas relief. *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991); *Byrd v. Collins*, 209 F.3d 486, 527 (6th Cir. 2000). On habeas review, federal courts ask whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process. *Cupp v. Naughten*, 414 U.S. 141, 147 (1973); *Estelle*, 502 U.S. at 72. It is not enough that the instruction was undesirable, erroneous, or even universally condemned. *Estelle*, 502 U.S. at 72 (citing *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). In evaluating the impact of the instruction, courts consider the claim in the context of the instructions and the trial record as a whole. *Cupp*, 414 U.S. at 147. The Supreme Court has defined the subcategory of infractions that constitute constitutional violations very narrowly. *Estelle*, 502 U.S. at 73 (citing *Dowling v. United States*, 493 U.S. 342, 352 (1990)). Accordingly, it is recommended that the Court find that Petitioner is not entitled to habeas relief on this claim.

### 3.    Violation of *Brady v. Maryland*, 373 U.S. 83 (1963), Habeas Claim X

Petitioner argues that the prosecution violated the Supreme Court's holding in *Brady v. Maryland*, 373 U.S. 83 (1963), and *United States v. Bagley,* 473 U.S. 667, 675 (1985). Respondent argues that Petitioner procedurally defaulted this claim.

The Michigan Court of Appeals reviewed Petitioner's unpreserved claim for plain error and rejected this claim by explaining:

> We also find no merit to defendant's argument that the police suppressed evidence. There is no indication in the record that evidence actually existed concerning the victim's blood alcohol level or whether she had taken other controlled substances. Absent a showing that any such evidence existed and was not disclosed, defendant cannot

establish a plain error. To the extent defendant complains that the police failed to investigate this information, his claim of error also cannot succeed because "the police have no constitutional duty to assist a defendant in developing potentially exculpatory evidence." *People v. Anstey*, 476 Mich. 436, 461; 719 NW2d 579 (2006).

Next, contrary to what defendant asserts, his police statements in which he protested his innocence were not "suppressed." Rather, the trial court precluded admission of the statements because they were inadmissible hearsay. The trial court's decision is supported by MRE 801(c) and MRE 802. Accordingly, there was no plain error.

The record also fails to support defendant's claim that police officers committed perjury when they testified that they did not find crack cocaine or liquor bottles at defendant's home. Defendant bases this claim on the fact that the officers' testimony contradicted the victim's testimony concerning the amount of alcohol that she and defendant drank. However, any inconsistencies do not establish that the officers deliberately provided perjured testimony. See *People v. Parker*, 230 Mich.App 677, 690; 584 NW2d 753 (1998). Defendant's argument does not involve an issue of perjury, but of credibility, which was a matter for the jury to resolve. *People v. Unger*, 278 Mich.App 210, 222; 749 NW2d 272 (2008). Moreover, the officers' testimony was not directly contradictory to the victim's testimony. The victim stated that defendant possessed crack cocaine and had used some, but she did not testify that any remained in the home by the time the police arrived. The victim also stated that the alcohol bottles may have "been hiding underneath something." Officer Hough did not recall whether he saw any evidence of cocaine use. Officer Lomakowski testified that he did not think any cocaine was found in the home and did not remember seeing any alcohol bottles. Officer Traviglia was not questioned about whether any cocaine was found in the home. Defendant has not demonstrated a plain error.

Because defendant has not shown that any of these substantive claims have merit, he has likewise failed to demonstrate that defense counsel was ineffective for failing to object to, or otherwise raise, these issues. *Wilson*, 252 Mich.App at 393–394.

*People v. McCray*, No. 325362, 2016 WL 4008401, at *8 (Mich. Ct. App. July 26, 2016).

Under *Brady*, "suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to

punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. The Supreme Court has held that "[t]here are three components of a true *Brady* violation: [t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999). Prejudice (and materiality) is established by showing that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* at 280 (quoting *Bagley*, 473 U.S. at 682); *see also Cone v. Bell*, 556 U.S. 449, 469–70 (2009). A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Bagley*, 473 U.S. at 682.

However, the *Brady* rule "only applies to evidence that was known to the prosecution, but unknown to the defense, at the time of trial." *Apanovitch v. Houk*, 466 F.3d 460, 474 (6th Cir. 2006). The government's failure to disclose potentially exculpatory evidence does not violate *Brady* "'where the defendant knew or should have known the essential facts that would permit him to take advantage of such information' or where the evidence is available from another source." *United States v. Clark*, 928 F.2d 733, 738 (6th Cir. 1991) (quoting *United States v. Grossman*, 843 F.2d 78, 85 (2d Cir. 1988)). "[W]here the alleged Brady evidence is available to the defense, there is really nothing for the government to disclose." *Bell v. Bell*, 512 F.3d 223, 235 (internal quotations omitted).

28

In the opinion of the undersigned, Petitioner has not established that the prosecution failed to disclose exculpatory evidence.  There is no evidence that Petitioner's victim underwent any blood-alcohol or toxicology tests that the prosecution could disclose. (ECF No. 16-7, PageID.659.) Additionally, Petitioner's statements about his innocence were not suppressed; instead, they were precluded from trial for hearsay. Finally, the police officers' testimony regarding the liquor bottles and drugs were not suppressed. Instead, they only testified about what they found and did not find. The testimony was not contradictory to the victim's testimony; therefore, it is an issue of credibility instead of perjury. Because Petitioner has failed to demonstrate any *Brady* violations and he failed to overcome his procedural default, he is not entitled to habeas relief on this claim.

### 4.    Fair Cross-Section, Habeas Claim XI

Petitioner contends that a fair-cross section of the community was excluded from the jury.  Respondent argues that Petitioner procedurally defaulted this claim by not objecting to the jury, affirmatively approving the jury selection process, and by waiving this issue.  The Michigan Court of Appeals rejected this claim by noting:

> In addition, because the record discloses that defense counsel actively participated in jury selection, exercised challenges for cause and preemptory challenges, did not object to any alleged improper exclusion of African–Americans from the jury, and affirmatively approved the composition of the jury selected and seated for trial, defendant has waived this issue for appeal. *Carter*, 462 Mich. at 215; *Carines*, 460 Mich. at 762 n 7.

29

*People v. McCray*, No. 325362, 2016 WL 4008401, at *10 (Mich. Ct. App. July 26, 2016).   Petitioner waived this claim during trial and has failed to establish cause and prejudice for his procedural default of this issue.

### VII.  Double Jeopardy, Habeas Claim III

Petitioner contends that the Double Jeopardy Clause should force the vacatur of his conviction for first-degree criminal sexual conduct because the jury acquitted him of assault by strangulation. The Double Jeopardy Clause guarantees that no person shall be "subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. Amend. V.   This clause protects against multiple punishments for the same offense.  *United States v. Dixon*, 509 U.S. 688, 696 (1993); *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969); *Costo v. United States*, 904 F.2d 344 (6th Cir. 1990). The protection against multiple punishments for the same criminal act "is designed to ensure that the sentencing discretion of courts is confined to the limits established by the legislature." *Ohio v. Johnson*, 467 U.S. 493, 499 (1984).  This guarantee serves principally as a restraint on courts and prosecutors, not on legislatures.  *Garrett v. United States*, 471 U.S. 773, 793 (1985) (no double-jeopardy violation when Congress intended to permit prosecution for continuing criminal enterprise after prior conviction for predicate offense); *Missouri v. Hunter*, 459 U.S. 359, 365-66 (1983). Therefore, when determining whether punishments are "multiple" under this aspect of the Double Jeopardy Clause, the court is bound by the intent of the legislature. *Johnson*, 467 U.S. at 499; *Hunter*, 459 U.S. at 366-68.

In this context, the United States Supreme Court has traditionally applied the "same-elements" test first enunciated in *Blockburger v. United States*, 284 U.S. 299, 304 (1932). *Rutledge v. United States*, 517 U.S. 292, 297 (1996). The same-elements test, also known as the "*Blockburger* test," inquires whether each offense contains an element not contained in the other. If "the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of a fact which the other does not." *Blockburger*, 284 U.S. at 304. If not, they are the "same offense" and double jeopardy bars additional punishment. *See Brown v. Ohio*, 432 U.S. 161, 168-69 (1977). If the *Blockburger* test is satisfied, however, it is presumed that the legislature intended to punish the defendant under both statutes and there is no double jeopardy bar to multiple punishments. *Whalen v. United States*, 445 U.S. 684, 691-92 (1980).

The Michigan Court of Appeals construed this claim as one involving inconsistent verdicts and rejected it on the merits:

> Defendant first argues that because he was acquitted of the charge of assault by strangulation, he could not properly be convicted of the first-degree CSC charge, which was based on the theory that he sexually penetrated the victim by force or coercion, causing personal injury. Although defendant frames this issue as a violation of his right to be free from double jeopardy, it substantively involves the question of allegedly inconsistent verdicts.
>
> We note, preliminarily, that the law is clear that "[j]uries are not held to any rules of logic," *People v. Vaughn*, 409 Mich. 463, 466; 295 NW2d 354 (1980), and their verdicts "need not be rationally consistent in light of [their] power of leniency," *People v. Torres*, 452 Mich. 43, 75; 549 NW2d 540 (1996). "A jury in a criminal case may reach different conclusions concerning an identical element of two different offenses."

*People v. Goss,* (After Remand), 446 Mich. 587, 597; 521 NW2d 312 (1994). Regardless, defendant's conviction of firstdegree CSC, and acquittal of assault by strangulation, is not inherently inconsistent. Contrary to what defendant argues, the "force" element of the CSC I charge was not based solely on the alleged act of strangulation. The record contains ample testimony of other forceful acts by defendant to commit first-degree CSC. The victim testified that defendant removed her pants and spread her legs while she resisted. The 911 call contains several statements by the victim in which she repeatedly tells defendant to get off of her. Evidence also indicated that the victim's right breast was bruised during the assault and that she suffered abrasions to both legs. In sum, it was not necessary for the jury to find that defendant committed an assault by strangulation in order to find that the physical force element of the CSC I charge was satisfied. Rather, the evidence permitted the jury to find, consistently, that defendant engaged in other forceful acts to sexually penetrate the victim, even if he did not commit an assault by strangulation. Accordingly, there is no merit to this issue. In addition, because defense counsel is not required to raise a meritless issue, *People v. Wilson*, 252 Mich.App 390, 393–394; 652 NW2d 488 (2002), counsel was not ineffective for failing to challenge the first-degree CSC verdict after defendant's acquittal on the assault charge.

*People v. McCray*, No. 325362, 2016 WL 4008401, at *4-5 (Mich. Ct. App. July 26, 2016).

Petitioner contends that his conviction for first-degree criminal sexual conduct (causing personal injury) should be vacated because the criminal sexual-conduct charge was predicated upon the acquitted charge of assault by strangulation.

The Michigan Court of Appeals noted the personal-injury aspect of the criminal sexual-conduct did not rest solely on the strangulation; instead, it relied on other forceful acts like Petitioner removing the victim's pants and spreading her legs, the victim's statements for Petitioner to get off her, and bruises and abrasions on her legs and breasts. (ECF No. 16-10, PageID.706.)

32

Because of this evidence, the jury was able to find Petitioner engaged in forceful acts to sexually penetrate the victim even if he did not commit an assault by strangulation. Given that the assault by strangulation was not the sole reason for the criminal sexual-conduct charge, Petitioner is not entitled to habeas relief on this claim.

## V.    Judicial Bias, Habeas Claim VII

Petitioner contends that the trial judge exhibited bias by revoking his bond during the trial and using the phrase "regular body injury" in the jury instructions. "[T]he Due Process Clause clearly requires a 'fair trial in a fair tribunal,' [citation omitted], before a judge with no actual bias against the defendant or interest in the outcome of his particular case." *Bracy v. Gramley*, 520 U.S. 899, 904-905 (1997). However, because of the difficulty in determining "whether a judge harbors an actual, subjective bias," the courts look to "whether, as an objective matter, the average judge in [that judge's] position is likely to be neutral, or whether there is an unconstitutional potential for bias." *Williams v. Pennsylvania*, 136 S. Ct. 1899, 1905 (2016) (internal quotations omitted); *see also Caperton v. A.T. Massey Coal Co., Inc.*, 556 U.S. 868, 883 (2009) ("The difficulties of inquiring into actual bias . . . simply underscore the need for objective rules.").

The Supreme Court has recognized constitutionally impermissible, objective indicia of bias in the following types of cases:  (1) those cases in which the judge "has a direct, personal, substantial pecuniary interest in reaching a [particular] conclusion," *Tumey v. Ohio*, 273 U.S. 510, 523 (1927); (2) certain contempt cases, such

as those in which the "judge becomes personally embroiled with the contemnor," *Offut v. United States*, 348 U.S. 11, 17 (1954); *see also Taylor v. Hayes*, 418 U.S. 488 (1974); and (3) cases in which a judge had prior involvement in the case as a prosecutor, *Williams*, 136 S. Ct. at 1905.  The courts indulge "a presumption of honesty and integrity in those serving as adjudicators." *Withrow v. Larkin*, 421 U.S. 35, 47 (1975).

In *Liteky v. United States*, 510 U.S. 540 (1994),[1] the Supreme Court described the showing Petitioner would have to make to succeed on his bias claim:

> First, judicial rulings alone almost never constitute a valid basis for a bias or partiality motion.  *See United States v. Grinnell Corp.*, 384 U.S. at 583.  In and of themselves (*i.e.*, apart from surrounding comments or accompanying opinion), they cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required (as discussed below) when no extrajudicial source is involved.  Almost invariably, they are proper grounds for appeal, not for recusal.  Second, opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.  Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge.  They *may* do so if they reveal an opinion that derives from an extrajudicial source; and they *will* do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.  An example of the latter (and perhaps of the former as well) is the statement that was alleged to have been made by the District Judge in *Berger v. United States*, 255 U.S. 22 (1921), a World War I espionage case against German-American defendants: "One must have a very judicial mind, indeed, not [to be] prejudiced against the German Americans" because their "hearts are reeking with disloyalty."  *Id.*, at 28 (internal quotation

_____

[1]    *Liteky* is a case that addresses the statutory recusal standard for federal judges.  The Sixth Circuit has, nonetheless, relied on *Liteky* to provide the standard for assessing judicial bias claims under the Due Process Clause.  *See Alley v. Bell*, 307 F.3d 380, 386 (6th Cir. 2002); *Lyell v. Renico*, 470 F.3d 1177, 1187 (6th Cir. 2006).

marks omitted).   *Not* establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display.   A judge's ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration— remain immune.

*Liteky*, 510 U.S. at 555-556 (emphasis in original).

The Michigan Court of Appeals, rejected Petitioner's bias argument as meritless:

Defendant next argues that reversal is required because the trial court was biased against him. A criminal defendant is entitled to a neutral and detached magistrate; however, a defendant claiming judicial bias must overcome a heavy presumption of judicial impartiality. *People v. Jackson*, 292 Mich. App 583, 597–598; 808 NW2d 541 (2011). The fact that the trial court has formed an opinion, is critical or hostile to defendant or counsel, or makes rulings favoring the prosecution, does not demonstrate bias "unless there is a deep-seated favoritism or antagonism such that the exercise of fair judgment is impossible." *Id*. at 597 (quotation omitted). A defendant may also be denied a fair trial if a trial court pierces the veil of judicial impartiality. *People v. Stevens*, 498 Mich. 162, 164; 869 NW2d 233 (2015). Conduct pierces this veil when, considering the totality of the circumstances, it is reasonably likely that the "conduct improperly influenced the jury by creating the appearance of advocacy or partiality against a party." Id.

Defendant relies on the fact that the trial court revoked his bond in the middle of trial to support his claim of judicial bias. The record does not disclose the reasons or circumstances that led to the revocation of defendant's bond. Given that there was no objection to the revocation of defendant's bond, and that bond properly may be revoked in certain circumstances, MCR 6.106(B)(1)(a), we are left with no record from which to conclude that the revocation of defendant's bond was plain error, and accordingly, no basis for concluding that this matter supports defendant's claim of judicial bias.

Defendant also complains that the trial court's use of the phrase "regular body injury" in the jury instruction explaining the injury necessary to support a first-degree CSC conviction is evidence of the court's bias or partiality. We disagree. The CSC statute, MCL

750.520a(n), provides that "'[p]ersonal injury' means bodily injury, disfigurement, mental anguish, chronic pain, pregnancy, disease, or loss or impairment of a sexual or reproductive organ." Because a "regular bodily injury" qualifies as a "bodily injury," the trial court's statement that a "regular bodily injury" is sufficient to meet the personal injury element was not erroneous. Thus, defendant has not shown that the trial court's use of the term "regular bodily injury" demonstrates any bias or partiality against him.

Defendant also advances a claim of ineffective assistance of counsel, which is based on his assertions that counsel berated him in his holding cell, provided him with ill-fitting clothing, or otherwise treated him improperly. Defendant has not presented any factual support for these assertions. Moreover, he fails to explain how this alleged conduct prejudiced his right to a fair trial. Therefore, he has not demonstrated that he is entitled to relief due to ineffective assistance of counsel. *Trakhtenberg*, 493 Mich. at 51.

*People v. McCray*, No. 325362, 2016 WL 4008401, at *6-7 (Mich. Ct. App. July 26, 2016).

While the trial court did revoke Petitioner's bond during the trial, the record does not reflect the reason for the revocation, nor does it show his counsel's objection. (ECF No. 16-7, PageID.652.) Because the revocation was uncontested, and within the trial court's power, there is no basis to conclude the trial court was biased against the Petitioner.

Additionally, the trial court's use of "regular body injury" did not amount to judicial bias. The Michigan Court of Appeals noted the jury instruction was correct based on the language of the statute. Accordingly, counsel had no basis to object.

The record amply supports the conclusion that the trial judge's statements at the sentencing were "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings" and,

36

thus, "do not constitute a basis for a bias or partiality motion . . . ." *Liteky*, 510 U.S. at 555-556.  The Michigan Court of Appeals' rejection of Petitioner's claim, therefore, is neither contrary to, nor an unreasonable application of, clearly established federal law. Accordingly, it is the opinion of the undersigned that Petitioner is not entitled to habeas relief on this claim.

## VI.    Sentencing, Habeas Claim IX

For his ninth ground for relief, Petitioner contends that his sentence was disproportionate to the point of depriving him of his Eighth Amendment right against cruel and unusual punishment.  Once again, Petitioner failed to "fairly present" his federal claim in the state courts.  In his briefs before the Michigan appellate courts, Petitioner did not raise the Eighth Amendment; rather, he claimed that his sentence was disproportionate under the analysis enunciated by the Michigan Supreme Court in *People v. Milbourn*, 461 N.W.2d. 1 (Mich. 1990).  Under *Milbourn*, the sentencing court must exercise its discretion within the bounds of Michigan's legislatively prescribed sentence range and pursuant to the intent of Michigan's legislative scheme of dispensing punishment according to the nature of the offense and the background of the offender.  *Milbourn*, 461 N.W.2d at 9–10; *People v. Babcock*, 666 N.W.2d 231, 236 (Mich. 2003).  It is plain that *Milbourn* was decided under state, not federal, principles.  *See Lunsford v. Hofbauer*, No. 94-2128, 1995 WL 236677, at *2 (6th Cir. Apr. 21, 1995); *Atkins v. Overton*, 843 F. Supp. 258, 260 (E.D. Mich. 1994).  A federal court may grant habeas relief solely on the basis of federal law and has no power to intervene on the basis of a perceived error of state law.  28 U.S.C. § 2254(a); *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Pulley v. Harris*, 465 U.S. 37, 41 (1984).

Thus, Petitioner's claim based on *Milbourn* is not cognizable in a habeas corpus action.

Moreover, Petitioner's claims that his sentence is unreasonable and disproportionate are not otherwise cognizable as a constitutional challenge.  The United States Constitution does not require strict proportionality between a crime and its punishment.  *Harmelin v. Michigan*, 501 U.S. 957, 965 (1991); *United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000).  "Consequently, only an extreme disparity between crime and sentence offends the Eighth Amendment."  *Marks*, 209 F.3d at 583; *see also Lockyer v. Andrade*, 538 U.S. 63, 77 (2003) (gross disproportionality principle applies only in the extraordinary case); *Ewing v. California*, 538 U.S. 11, 36 (2003) (principle applies only in "'the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality'") (quoting *Rummel v. Estelle*, 445 U.S. 263, 285 (1980)).  A sentence that falls within the maximum penalty authorized by statute "generally does not constitute 'cruel and unusual punishment.'"  *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000) (quoting *United States v. Organek*, 65 F.3d 60, 62 (6th Cir. 1995)).  Ordinarily, "[f]ederal courts will not engage in a proportionality analysis except in cases where the penalty imposed is death or life in prison without possibility of parole."  *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995).  Petitioner was not sentenced to death or life in prison without the possibility of parole, and his sentence falls within the maximum penalty under state law.  Petitioner's sentence does not present the extraordinary case that warrants deeper inquiry into

reasonableness and proportionality or that runs afoul of the Eighth Amendment's ban of cruel and unusual punishment.

The Michigan Court of Appeals considered and rejected Petitioner's sentencing claim on the merits:

> We find no merit to defendant's argument that he was denied due process because the trial court imposed greater sentences than recommended in his presentence investigation report (PSIR). Although the PSIR was required to include a recommended disposition, MCR 6.425(A)(1)(k), the trial court had the ultimate responsibility for determining defendant's sentences, MCR 6.425(E)(1)(d). The trial court complied with the sentencing procedure in MCR 6.425(E), including affording defendant an opportunity to address the information contained in the PSIR, and an opportunity to advise the court of any circumstances defendant believed the court should consider in imposing sentence. Defendant was afforded due process.
>
> Further, contrary to what defendant asserts, the trial court did not sentence him above the sentencing guidelines recommended sentence range. By defendant's own admission, defendant's guidelines range for the first-degree CSC conviction was 108 to 360 months. The trial court's minimum sentence of 300 months is within that range.
>
> Although defendant complains that there were factual inaccuracies in the PSIR, defense counsel stated at sentencing that defendant had no corrections to the information in the PSIR. Counsel's affirmative waiver extinguished any claim regarding the factual accuracy of the PSIR. Carter, 462 Mich. at 215; *Carines*, 460 Mich. at 763 n 7. In addition, there is no basis for concluding that any factual errors in the PSIR affected the length of defendant's sentences. Defendant was sentenced as a fourth-offense habitual offender. His first-degree CSC conviction qualifies as a "serious crime" under MCL 769.12(1)(a) and (6)(c), and he had prior felony convictions for possession of cocaine, MCL 333.7403, and delivery or manufacture of cocaine, MCL 333.7401, which both qualify as a "listed prior felony" under MCL 769.12(1)(a) and (6)(a)(ii ). Therefore, as the parties acknowledged at sentencing, defendant was subject to a statutory minimum sentence of 25 years. MCL 769.12(1)(a). Despite the prosecutor's urging to sentence defendant at the high end of the guidelines range (i.e., 30 years), the trial court elected to impose the statutory minimum sentence of 25 years. Thus, even if defense counsel performed deficiently by not challenging certain information in the

PSIR, defendant was not prejudiced by counsel's failure to object. Accordingly, defendant is not entitled to resentencing.

*People v. McCray*, No. 325362, 2016 WL 4008401, at *8-9 (Mich. Ct. App. July 26, 2016).

In the opinion of the undersigned, Petitioner has failed to establish Constitutional error occurred during his sentencing. Accordingly, Petitioner is not entitled to habeas relief on this claim.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, I have examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists of reason could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537

U.S. 322, 327 (2003).  In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims.  *Id.*

I find that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims would be debatable or wrong.  Therefore, I recommend that the Court deny Petitioner a certificate of appealability.

Moreover, although I conclude that Petitioner has failed to demonstrate that he is in custody in violation of the constitution and has failed to make a substantial showing of a denial of a constitutional right, I would not conclude that any issue Petitioner might raise on appeal would be frivolous.  *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## Recommended Disposition

For the foregoing reasons, I recommend that the habeas corpus petition be denied.  I further recommend that a certificate of appealability be denied.  Finally, I recommend that the Court not certify that an appeal would not be taken in good faith.


Dated:  August 24, 2021                     /s/ *Maarten Vermaat*
                                            MAARTEN VERMAAT
                                            U.S. MAGISTRATE JUDGE


## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).